729 So.2d 244 (1998)
Russell H. BRENNAN and Darlene M. Brennan, Appellants,
v.
J.W. WEBB, Appellee.
No. 96-CA-00574 COA.
Court of Appeals of Mississippi.
September 1, 1998.
Rehearing Denied November 10, 1998.
Certiorari Denied January 21, 1999.
*245 E. Foley Ranson, Ocean Springs, for Appellants.
Ernest Ray Schroeder, Melinda Owen Johnson, Pascagoula, for Appellee.
Before THOMAS, P.J., and DIAZ and HERRING, JJ.
HERRING, Judge, for the Court:
¶ 1. This appeal comes to us from the Circuit Court of Jackson County, Mississippi, where a jury returned a verdict in favor of the Appellee/Defendant J.W. Webb, and against Russell H. Brennan and Darlene M. Brennan. The Brennans claimed that Webb negligently caused them to be without homeowner's insurance coverage resulting in a financial loss incurred by them when their home was destroyed by fire. On appeal, the Brennans claim that the trial court erred when it excluded their expert witness from testifying on the issues of damages and in failing to grant and deny certain jury instructions. We reverse and remand for further proceedings for the reasons stated in this opinion.

A. THE FACTS
¶ 2. The facts of this case are quite simple. On September 26, 1991, Mr. Brennan filled out an application for a homeowner's insurance policy at the office of J. W.Webb, a licensed insurance agent working exclusively with State Farm Fire and Casualty Company. He was assisted in completing the application by Beth Hundscheid Shull, one of Webb's employees. In his application, Brennan represented that he had never previously filed for a loss on an insurance policy, and that he had never previously been refused renewal of an insurance policy. Both of these representations by Mr. Brennan were false. In 1990, the Brennan home was burglarized and a claim was filed on the Brennans' homeowner's insurance policy with United States Fidelity and Guaranty Company (USF & G) in the amount of approximately $15,000. Furthermore, the Brennans filed a claim in 1989 with USF & G for a property loss by theft in regard to property taken from Mr. Brennan's motor vehicle. According to the record, USF & G informed the Brennans in July, 1991, that their policy would not be renewed effective August 21, 1991. In an effort to explain his misrepresentations on his State Farm insurance application, the Brennans claim that Mr. Brennan completed his application at a time when he was mentally ill and under the influence of alcohol. They claim that he did not intend to answer the questions falsely.
¶ 3. On March 19, 1992, the Brennan home was destroyed by a fire apparently caused by pans of grease left on the Brennans' kitchen stove. After the loss, State Farm discovered the two misrepresentations found in the Brennans' application for homeowner's insurance. Based upon these misrepresentations, State Farm filed a declaratory action in the Circuit Court of Jackson County, Mississippi, seeking an adjudication that it could deny coverage on the Brennan homeowner's policy. State Farm was successful in securing the requested declaratory judgment, and the Brennans were left without insurance coverage on their fire loss. Thereafter, the Brennans filed this action against Webb, asserting that he negligently allowed them to be left without insurance coverage. More specifically, the Brennans assert that Webb allowed an unlicensed employee, Beth Hundscheid Shull, to take the insurance application from Mr. Brennan at a time when he was mentally unstable and intoxicated. The Appellants claim that Ms. Shull was negligent in failing to recognize Mr. Brennan's condition and that he was incapable of giving accurate answers to the questions posed in the insurance application. After a trial on the merits, a jury returned a verdict in Webb's favor and denied any relief to Mr. and Mrs. Brennan. They now appeal to this Court.

*246 B. THE ISSUES
¶ 4. The Appellants raise four issues on appeal which we take verbatim from their brief:
I. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING PLAINTIFF'S WITNESS, MARK MOHLER, TO TESTIFY AT THE TRIAL.
II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE PLAINTIFF'S JURY INSTRUCTION NO. P-10 TO THE JURY.
III. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE PLAINTIFF'S JURY INSTRUCTION NO. P-3 TO THE JURY.
IV. WHETHER THE TRIAL COURT ERRED IN GIVING DEFENDANT'S JURY INSTRUCTION NO. D-6A TO THE JURY.
C. ANALYSIS

I. DID THE TRIAL COURT ERR IN NOT ALLOWING PLAINTIFF'S WITNESS, MARK Moler, TO TESTIFY AT THE TRIAL?
¶ 5. In the case sub judice, the Brennans did not designate Mark Moler, a general insurance agent, as an expert witness until one week prior to trial. The purpose of Moler's testimony was to establish for the Appellants (1) that Mr. and Mrs. Brennan could have procured home fire insurance from another company had they been informed at the outset that Webb could not write their insurance; and (2) to establish the measure of damages suffered by the Appellants because of Webb's negligence, based upon the amount of insurance that the Brennans could have received from another insurer.
¶ 6. Rule 4.04 of the Mississippi Uniform Rules of Circuit and County Court Practice (URCCC) states in part that "[a]bsent special circumstances the court will not allow testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least sixty days before trial." (emphasis added). As stated, the record discloses that Moler was not designated as an expert witness until only one week prior to trial. However, the Brennans claim that special circumstances were in existence as contemplated by Rule 4.04 which establish that Moler should have been allowed to testify. The Brennans further contend that the trial court committed reversible error when it excluded Moler, thereby fatally (1) preventing the Brennans from presenting any guidance to the jury as to how to measure the damages suffered by the Brennans, and (2) weakening their argument that they could have procured homeowner's fire insurance from another source.
¶ 7. In support of their contention that special circumstances existed and that Moler should have been allowed to testify, the Brennans point out that URCCC 4.04 did not become effective until May 1, 1995, approximately nineteen months after this action was originally filed on November 3, 1993. Thus, there was no discovery rule when the action was filed that required expert witnesses be designated sixty days prior to trial. Instead, the method used to discover expert witnesses at that time was by interrogatory pursuant to the discovery rules of the Mississippi Rules of Civil Procedure (M.R.C.P.). See specifically M.R.C.P. 26(b)(4). In addition, the parties entered into a "Stipulation" on May 12, 1994, that a large body of discovery information generated in the declaratory action filed by State Farm against the Brennans, including depositions of Webb, Beth Hundscheid Shull, answers to interrogatories and requests for admission and production of documents by State Farm and the Brennans, as well as sworn statements previously given by Mr. and Mrs. Brennan, would be admissible evidence in this action. It is also noteworthy that no pre-trial discovery was conducted in this case by Webb. Webb filed no request that the Brennans identify their expert witnesses pursuant to M.R.C.P. 26(b)(4) during the nineteen months that elapsed after this action was filed prior to the enactment of URCCC 4.04.[1] On the other hand, *247 the Brennans did comply with our rules of civil procedure and requested Webb to identify his witnesses.
¶ 8. A summary of the argument of the Brennans on this issue is set forth on pages 15 and 16 of their brief:
1. URCCC 4.04 did not become effective until nineteen (19) months after this suit was filed and twelve (12) months after the Stipulation regarding pretrial discovery;
2. Mr. Webb did not request the identity of the Brennan's witness in his pretrial discovery;
3. Mr. Webb's counsel, three (3) weeks prior to trial, wrote to the Brennan's requesting the identity of their trial witnesses and one (1) week prior to trial were informed of Mr. Moler and his testimony;
4. The trial court imposed the most severe sanctionexcluding the witness Mark Molerwhen other remedies were available, especially in light of Mr. Webb's counsel not claiming surprise; and,
5. The resulting prejudice to the Brennans far outweighed the potential damage to Mr. Webb.
¶ 9. The measure of damages recoverable by the Brennans in this action would have been the amount of insurance the Appellants could have obtained from a source other than Webb. However, by excluding Moler's testimony, the jury was not instructed on how to arrive at damages, and the jury was effectively precluded from granting the Brennans any relief. Thus, they claim, citing McCollum v. Franklin, 608 So.2d 692 (Miss.1992), that the trial court's exclusion of Moler was too harsh, given the peculiar circumstances of this case.
¶ 10. On the other hand, Webb contends that counsel for the Brennans did not even interview Moler until one week prior to trial and only then was a determination made that Moler would be a witness for the Appellants. Webb contends therefore that no special circumstances exist in this case which would justify anything other than a strict construction of Rule 4.04. We disagree.
¶ 11. The decision to sanction a party for discovery violations rests with the discretion of the trial court. Tinnon v. Martin, 716 So.2d 604, 611 (Miss.1998). We will not reverse on this issue absent an abuse of that discretion. While we are dealing with a particularly strict standard of review, we rule that there was an abuse of discretion here. The decision to exclude the Brennans' expert effectively prohibited them from recovering any damages in the event that they were successful on the merits of their case, and in our opinion, the absence of a damages instruction may have confused the jury and led its members to return a defendant's verdict. See Jury Instruction P-3 which stated that if the Brennans failed to prove any essential element of their claim by a preponderance of the evidence, the jury "should find for the defendant." This fact, combined with the fact that the rules of discovery changed dramatically during the course of this action, leads us to the conclusion that the Brennans were unduly prejudiced when Moler's testimony was totally excluded. We agree with the supreme court's decision in McCollum v. Franklin that exclusion of a witness for a discovery violation is a sanction of last resort. McCollum, 608 So.2d at 694. In this case, either a continuance or allowing Webb time to interview Moler would have been more appropriate. We hold that there were special circumstances in this case and that the trial court abused its discretion in excluding Moler as an expert witness for the Brennans.
II. DID THE TRIAL COURT ERR IN REFUSING TO GIVE PLAINTIFFS JURY INSTRUCTION NO. P-10 TO THE JURY?
IV. DID THE TRIAL COURT ERR IN GIVING DEFENDANT'S JURY INSTRUCTION NO. D-6A TO THE JURY?
¶ 12. Issues two and four involve the same legal issues and are discussed together here. The Brennans assert that Webb acted negligently in allowing a non-licensed employee to assist Mr. Brennan in preparing his insurance application. According to the record, Beth Hundscheid Shull originally spoke to Mr. Brennan on the telephone and gave him an estimate of insurance costs. The *248 next day Mr. Brennan traveled to Webb's office and dealt exclusively with Ms. Shull, who took his insurance application and issued him a field policy. Ms. Shull also telephoned Brennan's home mortgagee, Magnolia Federal, and informed the bank that State Farm was Brennan's new home insurance carrier and directed the bank to pay State Farm's insurance premiums in the future from Brennan's monthly mortgage payments. Ms. Shull then directed Jeff Webb, the son of J.W. Webb, to travel to the Brennan home and to photograph and diagram the house, with square footage notations. Jeff was also an unlicensed employee of J.W. Webb.
¶ 13. The Appellants argue that Mr. Brennan was mentally ill and intoxicated when he answered the questions on the insurance application and that his condition should have been discovered by Ms. Shull when she took Mr. Brennan's application. They contend that Mr. Brennan was in no condition to complete the insurance application and that Ms. Shull's negligent failure to recognize Brennan's condition caused the homeowner's policy to be issued based upon erroneous information, all to the detriment of the Brennans who were left without insurance coverage when their home was destroyed by fire. Proposed Jury Instruction P-10 offered by the Brennans but denied by the trial court, stated:
Under the law of the State of Mississippi, every person who takes or transmits, other than for himself, an application for insurance or who makes or forwards a diagram of any building or who shall do or perform any other act or thing in the consummation of any contract of insurance, must be duly licensed by the Mississippi Commissioner of insurance. Further, any person who shall do any act in the soliciting, making or executing of any contract of insurance who is not so licensed, shall be in violation of this law.
If you believe by a preponderance of the evidence in this case that an employee or employees of the Defendant violated this law and if you further find that said violations were the sole proximate cause or a proximate contributing cause of the Plaintiff's damages, then you must find that the Defendant was negligent as a matter of law and you shall return a verdict for the Plaintiff's.
¶ 14. Jury Instruction D-6A, offered by J.W. Webb and granted by the trial court, stated:
The Court instructs the jury that under the law of the State of Mississippi, it is not a requirement that any person who takes or transmits an application for insurance or who makes or forwards a diagram of any building, who is an employee of a duly licensed agent, be licensed as an insurance agent by the Mississippi Commissioner of Insurance.
¶ 15. The trial court apparently granted Instruction D-6A because counsel for the Brennans stated precisely the opposite in his opening statement to the jury.
¶ 16. The Brennans base their legal argument in support of Instruction P-10 upon Sections 83-17-1, 83-17-5, and 83-17-19 of the Mississippi Code. Section 83-17-1 defines an "agent" to include any person who:
solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect, or transmit any premium of insurance, or make or forward a diagram of any building, or do or perform any other act or thing in the making or consummation of any contract of insurance for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request or by the employment of the insurance company, or of or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract.
*249 Sections 83-17-5 and 83-17-19 state that agents engaging in the activities described in Section 83-17-1 without being licensed are guilty of misdemeanors. Based on these sections, the Brennans argue that 1) Beth Shull and Jeff Webb were agents acting on behalf of State Farm and Webb; and 2) Beth Shull and Jeff Webb were unlicensed and were therefore guilty of criminal misdemeanors. Thus, the Brennans claim that Webb was negligent in his company's dealing with the Brennans. In other words, because he allowed his unlicensed employees to complete Mr. Brennan's insurance application, the Brennans suffered an absence of insurance coverage when their house was destroyed by fire. The Brennans cite no other authority on their theory of liability to establish Webb's responsibility for their loss.
¶ 17. The legal argument set forth in this case by the Brennans, although not termed by them as such, involves the concept of negligence per se. Simply put, negligence per se and subsequent liability arise in certain situations when a statute is violated by one party and this violation proximately causes injury to a another party. To succeed on a negligence per se claim, the plaintiff must show that (1) he is a member of the class sought to be protected under the statute; (2) that his injuries were of a type sought to be avoided by the statute; and (3)that the violation of the statute proximately caused or contributed to his injuries. Snapp v. Harrison, 699 So.2d 567 (¶ 22) (Miss.1997).
¶ 18. Webb argues that the purpose of the statutes in question are to prevent insurance companies from denying coverage on policies which they claim were not authorized to be issued in the first place, not to establish civil liability for non-compliance. We agree. In McCann v. Gulf Nat'l Life Ins. Co., 574 So.2d 654, 660 (Miss.1990), the Mississippi Supreme Court held that Section 83-17-1 "was enacted to prevent insurance companies from denying liability for the acts of third persons." Webb also calls our attention to Section 83-17-29 of the Mississippi Code, which prohibits persons from counseling others in insurance matters "unless licensed therefor as an agent or solicitor, or unless employees of an authorized insurer or the employees of a general agent representing an authorized insurer...." The inference being that the legislature did not intend to outlaw employees of licensed agents from performing tasks for their employers associated with the sale of insurance.
¶ 19. We rule that the legislature did not intend to create civil liability in a situation such as this based solely upon the violation of Sections 83-17-5 and 83-17-19. Section 83-17-1 merely prohibits an insurance company from denying that an employee is an "agent," while Sections 83-17-5 prohibits insurance agents from selling insurance without a license. Thus, the purpose of Section 83-17-1 is entirely different from the purposes of Sections 87-17-5 and 83-17-19. Reading them together leads to an incorrect conclusion. The licensing scheme called for by Sections 83-17-5 and 83-17-19 are designed to regulate the insurance industry and to prevent the widespread, unchecked sale of insurance, and is not tied to the definition of "agent" found in Section 83-17-1, as the Brennans suggest.
¶ 20. In a case discussing statutes which are predecessors to Section 83-17-1 and 83-17-5, the Mississippi Supreme Court held that "[t]he object of the statute was to keep wild-cat (insurance) companies, or companies not complying with the law, from doing business in this state." Saucier v. State, 189 Miss. 693, 198 So. 625, 627-28 (1940). Thus, even if Beth Shull and Jeff Webb violated the statutes in question, any possible harm proximately caused by this violation is not the type of harm sought to be prevented by the statute which would give rise to liability based upon a negligence per se theory of liability. State Farm is an authorized insurer in Mississippi, and Webb is a duly licensed insurance agent. Both State Farm and Webb were responsible for the acts of Beth Shull and Jeff Webb. We are not dealing with a "wildcat" insurance agency where a wronged insured would be left in the cold with no viable insurance company to hold accountable for any loss. In this case, the Brennans sought indemnity from State Farm following the loss of their home, and State Farm defended on the ground of material *250 misrepresentation by Mr. Brennan, not because of the unauthorized acts of their agent. Thus, the harm sought to be prevented by Sections 83-17-1 and 83-17-19 never came into existence. The trial court did not err in rejecting proposed Instruction P-10, which was essentially a negligence per se jury instruction. However, we also rule that the Brennans did state a legitimate cause of action in their complaint, not based upon negligence per se, but on a simple negligence theory of liability. In Mississippi, "an insurance agent owes a duty to his principal to procure insurance policies with reasonable diligence and good faith. The duty owed is to provide the level of skill in procuring insurance reasonably expected of one in that profession." Lovett v. Bradford, 676 So.2d 893, 896 (Miss.1996). A review of the record reveals that instruction P-12 adequately instructed the jury on the law of negligence in Mississippi which is applicable in this case. On retrial, this case should be tried on a simple negligence theory of liability.

III. DID THE TRIAL COURT ERR IN REFUSING TO GRANT PLAINTIFF'S JURY INSTRUCTION NO. P-13?
¶ 21. Because we rule that the trial court's decision to exclude Brennan's expert witness was in error, we also find error with its decision to refuse plaintiff's Jury Instruction No. P-13. Instruction P-13 sought to inform the jury as follows:
You are instructed that if you return a verdict for the Plaintiffs, then you may award them damages in a sum that will reasonably compensate them for their losses. The measure of damages in this case is to be determined by the amount of insurance coverage that Plaintiffs would have procured had they been informed by Defendant that he could not procure for them a homeowners insurance policy.
In arriving at the sum of damages, you may take into account the following factors;
1. The amount of insurance coverage Plaintiffs may have procured for the loss of their dwelling.
2. The amount of insurance coverage Plaintiffs may have procured for the loss of the contents of their dwelling.
3. The amount of insurance coverage Plaintiffs may have procured for loss of use.
¶ 22. The trial court refused Instruction 13 because the Appellants' expert witness was excluded from testifying concerning any alternate insurance which they could have procured, but for Webb's alleged negligence. Therefore, the court ruled that no measure of damages based upon alternative coverage was appropriate. When the evidence at trial does not support an offered jury instruction, the instruction is improper and should not be granted. Church v. Massey, 697 So.2d 407, 411 (Miss.1997). In this case, the jury possessed no facts which would have allowed them to comply with the offered instruction. Therefore, because no evidence was allowed to support it, the instruction was properly refused. However, because we hold that the exclusion of the Brennan expert witness was erroneous, Instruction P-13 should be reconsidered on remand when a new trial is held.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
BRIDGES, C.J., and THOMAS, P.J., COLEMAN, DIAZ, HINKEBEIN, KING and PAYNE, JJ., concur.
McMILLIN, P.J., dissents with separate written opinion joined by SOUTHWICK, J.
McMILLIN, Presiding Judge, dissenting:
¶ 24. I respectfully dissent. I agree with the majority that the trial court erred in excluding Mark Moler as a witness because he had not been disclosed sixty days prior to trial as required under Uniform Circuit and County Court Rule 4.04 A. In my opinion, Rule 4.04 must be read in conjunction with Mississippi Rule of Civil Procedure 26(b)(4), which sets out the procedure for requiring disclosure of expert witnesses. I do not think Rule 4.04 was intended to require automatic disclosure of experts in every case even when no request for such information *251 was made under the discovery rules. See M.R.C.P. 26(b)(4). Rather, it is my opinion that Rule 4.04 was designed to deal with the commonly occurring situation where a party responding to Rule 26(b)(4) discovery initially answers that expert witnesses have not as yet been selected and the party then supplements under Rule 26(f)(1)(B) to make the necessary disclosures shortly before trial is set to commence. Rule 4.04, in my view, serves only the purpose of requiring the necessary Rule 26(f)(1)(B) supplementation to occur, absent special circumstances, at least sixty days in advance of trial.
¶ 25. However, having said that, I am nevertheless convinced that the error of denying the Brennans the right to call Moler was harmless.
¶ 26. The primary importance of Moler's testimony, according to the majority, was to establish that the Brennans could have obtained insurance elsewhere if Webb had declined to accept Brennan's application or had canceled it after investigating and learning of Brennan's false statements. That evidence was not essential to the Brennans' right of recovery. In Lovett v. Bradford, the supreme court held that proof of the availability of insurance from another source is not a necessary element of a claim based on improper handling of an insurance application because, even without such proof, "[t]he jury could have reasonably inferred that, had [the Brennans] continued to look, [they] could have found insurance elsewhere." Lovett v. Bradford, 676 So.2d 893, 896 (Miss.1996). Mississippi Rule of Evidence 103(a) says that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...." M.R.E. 103(a). If proof that other insurance was actually available is not a necessary element of the plaintiffs right to recovery, it is difficult for me to see how exclusion of such evidence can be reversible error.
¶ 27. The majority says also that Moler's testimony was important to the Brennans in order to "establish the measure of damages... based upon the amount of insurance that the Brennans could have received from another insurer." I do not agree with this proposition. There can be no doubt that the jury was aware of the Brennans' theory of damages arising out of the absence of insurance coverage. The State Farm policy, showing the dollar amount of coverage of both the dwelling and contents, was made an exhibit without objection from Webb's counsel. In closing argument, the Brennans' attorney argued to the jury, again without objection from Webb's counsel, as follows:
But right here on the application this is the insurance they would have gotten. Their dwelling would have been covered for one hundred and three thousand two hundred dollars, their personal property would have been covered for seventy-seven thousand four hundred dollars. That's two hundred thousand six hundred dollars. That's what these people lost. Two hundred thousand six hundred dollars.
¶ 28. To my mind, that very graphically told the jury what damages the Brennans were seeking and Moler's proposed testimony would not have added any weight to that proposition. In fact, Moler's testimony would have resulted in a decreased claim for damages since Moler, in his proffered testimony, said that the contents coverage in his policy was less than that available under the State Farm policy (fifty percent of the coverage on the dwelling in Moler's policy as opposed to seventy-five percent in the State Farm policy). In the absence of Moler's testimony, Brennans' attorney was able to argue for a verdict over $25,000 higher than would have been proper had Moler's alternative policy been the measure of damages.
¶ 29. The Brennans' theory of negligence was that there were enough questions raised during the course of the application process that Webb should have been on notice that the Brennans' application may have contained some inaccuracies. According to the Brennans' theory, once Webb became aware of such a possibility, he had a fiduciary duty to the Brennans to independently investigate the accuracy of every representation made by Russell Brennan in the application. If he had done so, the theory continues, Webb would have discovered Brennan's erroneous answers about previous claims and non-renewals and would have proceeded to cancel the contract, thereby giving the Brennans *252 the opportunity to obtain insurance coverage elsewherehopefully at a time when Brennan's memory was substantially improved.
¶ 30. Assuming for the moment that this is a legitimate theory of negligence (an assumption I am willing to make for purposes of analysis, but only because the issue is not squarely before us), the question of whether Webb or his employees should have smelled a rat was a classic disputed issue of fact on which Moler's proposed testimony would have shed no light. That contested issue of fact was fairly tried, submitted to the jury for resolution, and the jury resolved the issue against the Brennans. That should end the matter.
¶ 31. I would affirm.
SOUTHWICK, J., joins this separate written opinion.
NOTES
[1] Perhaps because he sensed that the Brennans were proceeding to trial under the auspices of M.R.C.P. 26(b)(4), Webb's counsel finally wrote a letter to counsel for the Brennans three weeks prior to trial and requested the identity of the Brennan's trial witnesses. Moler and the nature of his testimony were identified two weeks later.