856 So.2d 621 (2003)
Dexter MOORE, Appellant,
v.
K & J ENTERPRISES d/b/a the Library Bar & Grill, Appellee.
No. 2001-CA-01705-COA.
Court of Appeals of Mississippi.
June 24, 2003.
Rehearing Denied September 9, 2003.
*623 T. Jackson Lyons, Jackson, Attorney for Appellant.
Mitchell Orvis Driskell, Robert F. Stacy, Jackson, attorneys for appellee.
EN BANC.
SOUTHWICK, P.J., for the Court.
¶ 1. Dexter Moore sought damages from an Oxford nightclub for selling alcohol to a minor, since that minor after leaving the club drove a vehicle that ran into and injured Moore. The trial court directed a defense verdict because the alcohol consumed by the driver had been purchased for him by a person whose identification plausibly showed the buyer to be an adult. However, there is no legally consequential position of "designated buyer," whom a nightclub may consider its sole concern and thereby blithely serve other demonstrably under-age individuals. The directing of a verdict was erroneous and we reverse and remand.

FACTS
¶ 2. On February 27, 1999, Katie Martin, Will Shappley, and three other friends were enjoying a social evening in Oxford. The group, all college students under the age of twenty-one, had already been at one bar before proceeding at 11:00 P.M. to "The Library" owned by the defendants. All except for Shappley received an "X" on their hands designating them as not being old enough to buy alcohol. Shappley presented a false identification showing him to be over the age of twenty-one. Once inside, the group went to an isolated corner of the bar. Shappley ordered rounds of drinks. The drinks were placed on the bar next to the group, where Martin and the others picked them up.
¶ 3. As the midnight-closing for the nightclub neared, the group determined that Martin was the least inebriated *624 among them. She was made the driver. Martin drove past another bar, Forrester's, which also was closing for the evening. Martin turned her head in order to view the crowd on her left exiting Forrester's; she was also distracted by one of her passengers. When she looked up, Martin saw Moore walking in the street in front of the vehicle. Martin was unable to stop and ran into Moore. Moore suffered a severe closed head injury resulting in brain damage.
¶ 4. Moore brought suit and alleged that the defendant had illegally sold the alcohol that Martin drank. On this appeal from a directed verdict for the nightclub, we must decide the breadth of the responsibility of this sort of establishment to monitor its furnishing of alcohol. Further, even if an illegality occurred, we must decide whether civil liability exists for resulting harm.

DISCUSSION

A. Negligence per seunderage buyer with false identification
¶ 5. The common law imposed no responsibility on a negligent seller of alcohol when a buyer's resulting intoxication proximately led to injuries. Munford Inc. v. Peterson, 368 So.2d 213, 215 (Miss.1979). This is because there was no common law duty of careful management of alcohol sales, the breach of which might lead to liability. Consequently, Moore was obliged here to proceed with a negligence per se claim. Negligence per se is founded on the violation of a statutory standard, usually a penal one. This means that even though general negligence concepts create no basis for suit against a seller, a violation of a statutory obligation by the provider of the alcohol can be the basis for a negligence per se claim. The plaintiff must show that (1) he is a member of the class sought to be protected under the statute; (2) that his injuries were of a type sought to be avoided by the statute; and (3) that the violation of the statute proximately caused or contributed to his injuries. Brennan v. Webb, 729 So.2d 244, 249 (Miss.Ct.App.1998).
¶ 6. This is the statute relied upon by Moore to advance his negligence per se claim:
[I]t shall be unlawful ...
(b) To sell, give or furnish any beer or light wine to any person visibly or noticeably intoxicated, or to any insane person, or to any habitual drunkard, or to any person under the age of twenty-one (21) years.
Miss.Code Ann. § 67-3-53 (Rev.2001). Will Shappley purchased the alcohol for the group of minors, and was under the age of twenty-one when he did so. An additional statute states this:
(4) A person who sells any beer or wine to a person under the age of twenty-one (21) years shall not be guilty of a violation of Section 67-3-53(b) if the person under the age of twenty-one (21) years represents himself to be twenty-one (21) years of age or older by displaying an apparently valid Mississippi driver's license containing a physical description consistent with his appearance or by displaying some other apparently valid identification document containing a picture and physical description consistent with his appearance for the purpose of inducing the person to sell beer or wine to him.
Miss.Code Ann. § 67-3-69 (Rev.2001). Shappley presented a driver's license belonging to an individual who was over age twenty-one, and whose appearance was similar.
¶ 7. The illegal sale of alcohol to minors has been found to establish negligence per se for civil liability. Delahoussaye v. Mary Mahoney's, Inc., 783 So.2d 666, 671 *625 (Miss.2001). Moore argues that since Shappley was in fact a minor, a violation of statute occurred. In his view, civil liability by the bar exists since the criminal offense was only excused due to Shappley's false identification.
¶ 8. It was the plausible identification that caused the trial court to grant a directed verdict. We find Moore's argument that an apparently valid identification only excuses and does not eliminate the criminal violation to be artful, but unconvincing. The statutes establish when the holder of a permit for the sale of intoxicating beverages is guilty of an offense. If an identification card was presented that was acceptable under the statute, then the seller is not guilty of the offense of selling to that under-age drinker. A reading of the two statutes together explains the offense: it is unlawful to sell, give or furnish any beer or light wine to any person under the age of twenty-one years unless such a person represents himself to be at least twenty-one years of age by displaying an apparently valid Mississippi driver's license containing a physical description consistent with his appearance. Miss.Code Ann. §§ 67-3-53(b) & 67-3-69(4) (Rev.2001) (paraphrase).
¶ 9. Though perhaps an affirmative defense, the effect of proving the defense is that the offense did not in fact occur. True, a sale to a minor occurred, but the offense as properly interpreted occurs only when there is an unjustified sale. Proof of the identification caused the trial judge to determine that there was no offense for the sale to Shappley.
¶ 10. Even if the statutory reference to a credible driver's license could be seen as only "excusing" a violation as Moore argues, there still would not be civil liability. Indeed, even when there is an excuse only of reason and not of law, a recent draft Restatement suggests that no liability arises:
An actor's excused violation of a statute is not negligence. A violation is excused when: ...
(b) the actor exercises reasonable care in attempting to comply with the statute; [or] (c) the actor neither knows nor should know of the factual circumstances that render the statute applicable....
RESTATEMENT (THIRD) TORTS § 15 (Tent. Draft # 1, 2001). A statute may excuse a violation or instead the statutory wording may suggest that no violation has occurred at all if certain actions are taken. Regardless of statutory terminology, the person committing the acts is liable neither criminally nor civilly for that act. This would mean that a violation of the statute does not create strict civil liability; the leaven of reasonableness in the permit holder's conduct is still added. We inject the concept of reasonableness into our discussion of the statutory obligations.
¶ 11. We reject, therefore, Moore's contention that an actionable claim lies for the Library's sale of intoxicants to Shappley as a minor. However, even if the Library is protected by the apparently valid identification from liability arising because of its sales to Shappley, other events of that evening may indicate that a different offense occurred and a different per se negligence issue arose.

B. Other theories of recovery
¶ 12. Moore contends that although the identification is all that the trial court considered, there is in fact and law more. The trial judge directed the verdict because "there has been nothing to contradict the allegation that this driver's license was used by this 20 year old." Moore submits that other possible violations of *626 section 67-3-54(b) would independently support his claim.
¶ 13. Licensees are prohibited from "selling, giving, or furnishing" intoxicating beverages to these categories: (1) persons visibly or noticeably intoxicated; (2) insane persons; (3) habitual drunkards; and (4) minors. Miss.Code Ann. § 67-3-53(b). A credible identification can only excuse the matter "proved" by the identification, namely, age. We will consider each other alleged violation.

1. The Library violated a duty not to sell to Shappley, a noticeably intoxicated person.
¶ 14. One part of the licensee statutes provides civil immunity if a permit holder lawfully sells or furnishes alcohol to a person who lawfully can purchase. Miss.Code Ann. § 67-3-73(2) (Rev.2001). Relevant to an additional offense alleged by Moore is that this immunity explicitly does not apply "when it is shown that the person making a purchase ... was at the time of such purchase visibly intoxicated." Miss. Code Ann. § 67-3-73(4) (Rev.2001). A statutory violation would arise if the Library sold to Shappley as a noticeably intoxicated person.
¶ 15. The bar argues that Moore never raised the visible intoxication in his pleadings or argued it in the hearing on the motion for a directed verdict. We cannot consider theories of recovery advanced for the first time on appeal. Scordino v. Hopeman Brothers, Inc., 662 So.2d 640, 646 (Miss.1995). Here, it was not made clear to the trial court that Shappley's potentially visible intoxication was a basis on which to find liability. Further, the evidence that he was visibly intoxicated was weak. However, because we find that reversal is required on Moore's next theory, we need not resolve here whether the trial court committed reversible error on this one.

2. The Library violated its duty not to "furnish" drinks to minors.
¶ 16. It is not enough for the Library to claim that it sold drinks only to Shappley, and he had a credible identification card. "There is no requirement that the intoxicated and negligent driver actually have purchased the alcohol." Delahoussaye, 783 So.2d at 670. The giving or furnishing of alcohol may also be improper. Miss. Code Ann. § 67-3-53 (Rev.2001). A later section of the same act makes it a crime for a minor to purchase or possess alcohol. Miss.Code Ann. § 67-3-70 (Rev.2001). Even had Shappley actually been an adult, these remaining issues exist.
¶ 17. Thus, a minor in the bar may not purchase or possess; the permit holder may not sell or furnish. Returning to the critical Delahoussaye precedent, we find that any statutory violation as noted in the parenthetical in the quote may create a basis for liability.
In order to establish liability by proving negligence on the part of Mary Mahoney's, Delahoussaye must prove, in addition to negligence per se (that Mary Mahoney's violated the statute by selling alcohol to a minor), that it was foreseeable that Tracy Collins, the minor who bought the alcohol from Mary Mahoney's, would share the alcohol with another minor who would negligently cause injury to Delahoussaye.
Delahoussaye, 783 So.2d at 671. Substituting for what occurred in our case, here we would insert in the parenthesis "(that the Library violated the statute by furnishing alcohol to a minor)," and then make the later phrase that "the minor who was furnished the alcohol by the Library would negligently cause injury to Moore."
*627 ¶ 18. The court in Delahoussaye determined that an improper sale to one minor, and a foreseeable sharing of that alcohol with another minor, was a basis for civil liability. We find that the court by injecting the concept of foreseeability was analyzing the minor's independent act of providing alcohol to another minor. The court had to decide if that sharing was an independent and superceding cause. If it were, then the alcohol permit holder would not be responsible. However, a cause remains a proximate cause when it "in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred." Id. In the court's next sentence, the requirement that the sharing be foreseeable is stated. Thus we find that this is the relevance of the discussion of foreseeability in Delahoussaye even if the person causing the injury did not obtain the alcohol as a direct result of a statutory violation by the permit holder, there still may be liability if the obtaining was foreseeable.
¶ 19. What the Delahoussaye majority did not address is that one person's buying alcohol for minors openly to consume on the permit holder's premises may be a separate statutory violation. We, however, must consider that point as it has been validly raised on this appeal. When the alcohol is delivered by a bartender, are the other minor's being "furnished" or served? When a reasonable bartender would know that the drinks are to be consumed by more than just the buyer, then the drinks are being furnished to the others. Thus both on the basis of the Delahoussaye approach of one minor's sharing drinks with others in the bar as an issue of foreseeability, and our additional point that one person's obvious buying for others causes the permit holder to be furnishing alcohol to all, there are possible reasons to find this bar liable despite the fake but credible identification.
¶ 20. The dissent argues that we should leave "furnish" dormant until a legislative definition is provided. That is a luxury, or an abdication, that we are not allowed. When a statute uses a word without giving it an explicit definition, the legislature itself has informed us that such words "are used according to their common and ordinary acceptation and meaning; but technical words and phrases according to their technical meaning." Miss.Code Ann. § 1-3-65 (Rev.1998).
¶ 21. The remaining question is whether there is sufficient evidence in the record to survive a motion for directed verdict. As Moore points out, the courts are to consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences. American Fire Protection, Inc. v. Lewis, 653 So.2d 1387, 1390 (Miss.1995). The dissent calls these "assumptions" that we impermissibly make. With respect to the dissent, appellate courts routinely must consider whether reasonable inferences existed from evidence. That is true whether we are deciding whether a judge improperly removed a dispute from the jury, or when we review a jury's verdict. Here, the following evidence appeared in the record:
1. Katie Martin's hand was marked with an "X," indicating she was under-age.
2. The group went directly to the bar.
3. There were no other patrons around them, and the bar only had 25-40 people there.
4. Martin said there was nothing impeding the bartender's view of them or the marks on their hands indicating who was of the age to drink.

*628 5. While at the Library for less than an hour, Martin had another beer as well as a shot.
6. While Martin could not remember whether she picked up the second beer from the bar, she remembered picking up the first beer and the shot glass from the bar.
¶ 22. The inferences from this evidence are strong that the Library knew or should have known that by twice providing five drinks to Shappley, with four marked minors standing next to him, that they were furnishing drinks to minors. The driver and marked minor Martin (item 6 above) also picked up two of her drinks. There is at least a question of factual inference as to whether the Library would have reasonably known that it was furnishing Katie Martin, an identified minor, with alcohol. She was the subsequent driver, so her drunkenness is a potential proximate cause of Moore's injuries.
¶ 23. There may well be a sophomoric game conducted by bars, especially in college towns. So long as the person to whom the bar sells has an acceptable identification, that person will be allowed to purchase as many drinks as he desires for as many minors as are with him. The question in this case is whether the game is a legal one. It is not. Designated drivers among adults in a bar are a benefit; designated buyers among minors in a bar are a subterfuge. The defendant marks each under-age patron but then rejects legal responsibility for these labeled minors' conspicuous consumption. Bars cannot be indifferent when individuals marked at their doors as being under-age are with the purchaser when enough orders are placed or delivered for them all. Only if the alcohol is not being consumed on premises might the focus rightly just be on the purchaser.
¶ 24. These statutes recognize a limited exception, which prevents the implying of even broader ones. A person who is at least eighteen years old may consume beer or wine with the consent and in the presence of a parent or guardian. Miss.Code Ann. § 67-3-54(1) (Rev.2001). Thus, even a parent may not purchase beer or wine for a child under the age of eighteen. This statute is relevant because a view of the overall statutory scheme, of which this cited statute is a part, indicates that the legislature has dealt with situations of one person of the proper age buying drinks for those under-age. Only in the narrow situation of section 67-3-54(1) is there approval for such action. There is no implied permit for a date or a friend to purchase alcohol for an under-age drinker.
¶ 25. The dissent relies on the absence of testimony regarding the bartender's awareness of Martin's alcohol consumption. The record contains evidence that the group, four of whom were marked by the Library at the door as underage, stood at a quiet corner of the bar with no other patrons around. Shappley, falsely claiming to be of drinking age, ordered rounds of drinks which were delivered to the bar. Martin picked up at least two of her three drinks from the bar. The holder of a license to serve alcohol on premises, who permits large numbers of minors to enter where alcohol is served, must be minimally observant. This bar might be found simply oblivious. It might also be found negligent per se. These facts are sufficient to warrant consideration of the question.
¶ 26. Alcohol and underage drinking remain matters about which society has conflicting attitudes. Attitudes may conflict, but there is nothing conflicting in these statutes. Furnishing of alcohol to underage drinkers is an offense both for the license holder who serves and the drinker who possesses. If it is argued that this *629 bar could not oversee who drank alcohol, that is factually unconvincing based on the evidence in the record. It is unconvincing legally as well.

3. The Library was negligent in its method of determining a minor's age.
¶ 27. In his final theory, Moore submits that the Library established a negligently inadequate procedure to determine the age of its patrons. The nightclub had numerous citations for underage drinking, which suggests to Moore that the procedures that were being used had historically been ineffective. However, the minority of everyone in the group except for the designated buyer William Shappley was properly identified. Therefore, if there was relevant negligence in identifying minors, it applied only to accepting Shappley's offered identification.
¶ 28. As noted already, any claim against the seller of alcohol for injuries proximately related to the intoxication of a patron must be based on a violation of a statutory provision. Mississippi's statutory scheme provides a defense to the sale to a minor if the seller was presented with "an apparently valid Mississippi driver's license" or "some other apparently valid identification document." Miss.Code Ann. § 67-3-69(4) (Rev.2001).
¶ 29. The statute requires an identification that is "apparently valid." The parties accept that "the method of determining a minor's age is for the proprietor to select." Peterson, 368 So.2d at 218. The issue is not the sufficiency of the procedures generally employed at this bar, but the sufficiency of the offered license in this specific case. The license itself is not in the record. We are informed that the identification presented by Shappley was someone else's valid Mississippi driver's license. The parties appear to accept that the photograph of the other person was "consistent with [Shappley's] appearance" as required under section 67-3-69. Since Moore does not dispute that consistency, the statutory defense to the sale to this patron remains viable.

4. Applicability of negligence per se
¶ 30. Not every requirement of law becomes a standard for negligence per se. As one authority explained, "there are statutes which are considered to create no duty of conduct toward the plaintiff, and to afford no basis for the creation of such a duty by the court." W. PAGE KEETON (ED.), PROSSER & KEETON ON THE LAW OF TORTS 222 (5th Student Ed.1984). What has been settled by the Mississippi Supreme Court is that the statutory prohibition on selling alcohol to minors creates a negligence per se standard for subsequent civil liability.
¶ 31. The nightclub here protests that Moore's claims if successful would impose an impractical monitoring function for its employees. What weight to give to such concerns has to some extent already been addressed by the legislature. Added to the alcohol licensing statutes in 1987 is an explanation of the limits of the civil liability of holders of alcohol permits. 1987 Miss. Laws ch. 451, codified as Miss.Code Ann. § 67-3-73 (Rev.2001). We have previously discussed part of that limiting section. The legislature concluded that it was the consumption of alcohol and not its sale that was the proximate cause of injuries produced by inebriated people. Id. No holder of an alcohol permit is liable civilly to someone subsequently injured by the acts of an intoxicated individual, when the permit holder "lawfully sells or serves intoxicating beverages to a person who may lawfully purchase such intoxicating beverages...." *630 Miss.Code Ann. § 67-3-73(2).[1]
¶ 32. This language is simply an explanation of the standard of care element of negligence per se. If the permit holder did not violate the statutes, i.e., if it lawfully sold or served someone who lawfully could purchase, then it cannot be found liable civilly for injuries that result from actions of an intoxicated individual. If negligence per se rules are assumed to be certain and immutable, then the statutory language might be seen as meaningless. However, negligence per se is a court-created doctrine. This statute adopts it as the limit of liability for the holder of an alcohol permit. If the permit holder acted lawfully, it has no civil responsibility. "Lawfully" prohibits serving minors unless they have credible even if false identifications or visibly intoxicated individuals of any age.
¶ 33. This nightclub argues that the statutes applied literally would impose impossible demands on the permit holder. We cannot parse the alcohol licensee offenses and discern why only some would form the basis for negligence per se. Even so, these statutes do not fit well with some possibly common situations. Serving someone "visibly intoxicated" is prohibited even if another allegedly will be driving. If a drinking patron later drove, the statutes appear unconcerned that the bar might have asked if someone who was not drinking would be the driver.
¶ 34. The Supreme Court has suggested that what may ameliorate some impracticalities is application of the doctrine of foreseeability. Under negligence per se, the standard of care is established by the statutory requirement. Yet the Court has still mentioned foreseeability:
Nevertheless, a finding of negligence per se is only the first step in the equation, and does not, in and of itself, establish liability on the part of the defendant. Negligence per se supplies only the duty and the breach of a duty elements of a tort. The plaintiff must also prove by preponderance of the evidence that the breach of the duty owed proximately caused the injury or damages sustained.
Proximate cause of an injury is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred. Foreseeability is an essential element of both duty and causation.

Delahoussaye, 783 So.2d at 671 (citations omitted) (emphasis added). Clear enough is that a statutory command creates the standard of care and a person has a duty to meet that standard. More complex is the role of "foreseeability" in the negligence per se context. The Delahoussaye court stated that the principle would affect both duty and causation. Duty is at least initially defined by the statute, as the first quoted paragraph stated.
¶ 35. We begin our answer to the questions raised by Delahoussaye's language with noting the multiple roles of foreseeability in negligence analysis:
1) Foreseeability of risk of some harm. KEETON, PROSSER ON TORTS § 31.
2) Foreseeability of specific consequences, i.e., even if some harm was reasonably expected, the degree and nature of the actual harm should be reasonably known. Id. at § 43.

*631 3) Foreseeability of an intervening cause. Id. at § 44.
¶ 36. What this listing does not explain is the means by which foreseeability affects negligence per se calculations. Negligence per se requires proof that (1) the plaintiff is a member of the class sought to be protected under the statute; (2) that his injuries were of a type sought to be avoided by the statute; and (3)(a) that the violation of the statute (b) proximately caused or contributed to his injuries. Snapp v. Harrison, 699 So.2d 567, 571 (Miss.1997). Obviously, then, there is more to the doctrine than just proving that failure to comply with a statute proximately caused injury.
¶ 37. Dean Keeton's explanation of negligence per se is similar. Certain threshold issues establish "when the court will look to a criminal statute for its negligence standard of the conduct of a reasonable person." KEETON, PROSSER ON TORTS § 36 at 222. Looking to the purpose of a penal statute provides an answer to whether the person seeking application of the statutory standard was within the class of individuals whose interests were to be protected by the statute. The nature of the injury suffered by the plaintiff must be compared to the types of harms that the statute was intended to abate. If those factors are met, then the statutory standard applies. The remaining consideration is whether the violation of the standard was the legally relevant cause of the injury. Id. at 222-27.
¶ 38. We find the role of foreseeability in negligence per se analysis primarily by noting how that analysis mirrors traditional negligence. The perspective to maintain for all negligenceper se or per factumis that it is "conduct which falls below the standard established by law for the protection of others against unreasonable risk. It necessarily involves a foreseeable risk, a threatened danger of injury, and conduct unreasonable in proportion to the danger." Id. at § 43. This negligence must also have been the legally responsible cause for the injury. Id. at § 42. A statute may resolve certain of the issues in negligence per se, but it remains a negligence category.
¶ 39. Determining the class of persons to be protected by the statute is a matter of statutory interpretation. Statutory purpose is rarely explained in detail in Mississippi. The purpose for these statutes was to end prohibition and through regulation "to prevent the illicit manufacture, sale, and consumption" of alcohol. Miss.Code Ann. § 67-3-1 (Rev.2001). As purpose is sought post hoc, foreseeability may provide illumination. The determination of whether the plaintiff is a member of the class to be protected will be influenced by whether such a person was the kind foreseeably at risk of injury if these specific statutory protections were not adopted. The court looks for those at foreseeable risk since it assumes the legislature was also seeking to be foresighted. Cases such as Delahoussaye have announced that the restrictions on alcohol permit holders are at least partly for the benefit of those who would be injured by drunk drivers.
¶ 40. Foreseeability is also relevant when evaluating whether the injuries were of the type that the statute sought to avoid. Again, in the absence of specific statutory language, the outer limit of the categories of injuries contemplated by the statute are those reasonably foreseeable when the statutory standard is not met. Cases we have already cited have recognized normal physical and emotional injuries from automobile accidents as within the risks to be lessened by the statute.
¶ 41. Foreseeability may also independently affect on the final issues of whether the statutory standard was violated and *632 whether a violation was a proximate cause of injury. The concept initially impacts these final issues since whether the class of persons and injuries are within the statutory purpose resembles the "proximate cause doctrine that is applied in ordinary negligence cases." RESTATEMENT (THIRD) TORTS § 14 cmt. f (Tentative Draft No. 1, 2001).
¶ 42. In sum, then, we find that the word "foreseeable" in Delahoussaye was a substitute for the more usual terminology of determining whether the injured party "is a member of the class sought to be protected under the statute, that his injuries were of a type sought to be avoided by the statute, and the statutory violation was a legally proximate cause ..." Brennan, 729 So.2d at 249.
¶ 43. We find no basis on which to sustain the trial court's actions because of the concept of foreseeability. We hold that the "give or furnish" statutory prohibition creates the potential for civil liability. The simple point before us is whether a bar commits an offense when a reasonable inference from the evidence is that the one "adult" was ordering drinks for minors to be consumed on the premises. We find that this inference is sufficient to create a fact question on liability.
¶ 44. This bar argues that instead the only issue is whether it secured protection from legal consequences by assuring itself that it dealt with the four identified minors through an intermediary whose adulthood was adequately "proved." That interpretation of a bar's duties might balance the requirements of the law with the practices in college towns and elsewhere. Our task is not to make compromises but to enforce the law as written. To find as a matter of law that this bar did not knowingly furnish alcohol to minors would make a distortion of the normal meanings of knowing, furnishing, and minors. The lower court erred in directing a verdict for the Library.

C. Admissibility of evidence
¶ 45. Finally, Moore submits that evidence of prior sales of alcohol to minors by the Library was improperly excluded. Moore contends that such evidence would be relevant to show opportunity, absence of mistake or accident, and foreseeability. The Library counters that Moore's evidence is nothing more than an attempt to show other bad acts to prove conformity therewith.
¶ 46. The admission or exclusion of evidence is within the discretion of the lower court. We will defer to such rulings absent an abuse of that discretion. Haggerty v. Foster, 838 So.2d 948, 958 (Miss. 2002). An evidentiary rule governs the admissibility of a party's other bad acts. M.R.E. 404(b). For Moore's evidence of numerous "minor in possession" violations by the Library to be admitted, it must fall within one of 404(b)'s exceptions. Exclusion of that evidence must constitute an abuse of the lower court's discretion before we may reverse on the question.
¶ 47. The plaintiff in Delahoussaye also attempted to introduce evidence of other sales to minors. The plaintiff similarly attempted to justify the evidence's admissibility in terms of the 404(b) exceptions, i.e. as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M.R.E. 404(b). There, the Supreme Court held:
We can conceive of no purpose for the proffered testimony other than to show that Mary Mahoney's has a propensity to sell alcohol to minors. The trial judge also properly excluded the testimony under Rule 403, as the probative value would have been greatly outweighed by the prejudicial value, thus *633 creating an improper basis for the jury determination in this case.
Delahoussaye, 783 So.2d at 673.
¶ 48. We likewise find no relevance for the evidence in this suit.
¶ 49. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS REVERSED AND REMANDED. ALL COSTS ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING, P.J., LEE, MYERS, AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. BRIDGES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY THOMAS AND CHANDLER, JJ.
BRIDGES, J., DISSENTING:
¶ 50. I dissent.
¶ 51. With respect to my colleagues in the majority, I am of the opinion that they reached a wrong decision as to the reversal and remand of the judgment of the Lafayette County Circuit Court. I am most concerned with the presumed facts and inferences that are contained in the majority's opinion and strongly disagree with its reasoning. Believing that the record contains facts that support the directed verdict given by the trial court, I would affirm.
¶ 52. First and foremost, I feel that it is important to note that my feeling would be different if this appeal had resulted from a summary judgment. However, that is not the case. This appeal is the result of a directed verdict, where the plaintiff had ample opportunity to present all evidence supporting his case to the trial court. It was only after that evidence was presented that the trial court felt that the plaintiff's evidence was insufficient, therefore, resulting in the directed verdict. With the majority's decision to reverse and remand, I strongly feel that this is only granting the plaintiffs a "second bite of at apple." They have already had their day in court and do not deserve a second chance to get it right.
¶ 53. Moore alleged that the trial court's view of § 67-3-53(b) was too narrow. He contends that § 67-3-69(4) provides a defense to only part of § 67-3-53(b). Moore asserts that the language is different between the two sections. Section 67-3-69(4) states "a person who sells any beer or wine to a person under the age of twenty-one years shall not be guilty of a violation ... if the person represents himself to be twenty-one years of age by displaying an apparently valid [identification]." The language in Section 67-3-53(b) states "it shall be unlawful ... to sell, give or furnish any beer or light wine to any person ... under the age of twenty-one years."
¶ 54. However, the appellees contend that The Library did not "furnish" alcohol to Katie Martin to which I agree. Katie Martin did not order or purchase the drinks she consumed, nor did she know where the bartender was when she picked up the drinks. There is no proof that the bartender ever saw Katie Martin with a drink. It is undisputed that the bartender never sold or served a drink to Katie Martin.
¶ 55. Moore suggests that the bartender somehow had knowledge that Katie Martin was drinking on the night in question and that she was a minor, however, there is no evidence in the record to support that contention, nor was there any testimony by any of the witnesses as to where the bartender was when Katie Martin picked up and consumed the beverages.
¶ 56. Moreover, The Library only sold drinks to Will Shappley, who presented an apparently valid identification. This is not a violation under the statute. Shappley *634 was the one who, in turn, provided drinks to Katie Martin. Therefore, The Library did not furnish alcohol to Katie Martin in violation of § 67-3-53(b).
¶ 57. While I appreciate the majority setting out the facts that were in the record to help prove that drinks were "furnished," I noticed that the main facts that should be used to decide this issue were left out. In accordance with the majority, we enumerate the relevant facts in regards to this issue.
1. Katie Martin did not order or purchase the drinks she consumed.
2. Katie Martin did not purport to testify where the bartender was when she picked up the drinks.
3. Diala Husni did not know what the bartender did or saw.
4. Tara Childers was not paying attention and could not say where the bartender was.
5. There is no proof the bartender ever saw Katie Martin with a drink.
6. It is undisputed that the bartender never gave or handed a drink to Katie Martin.
7. Testimony from the bartender was never presented.
8. The bartender sold drinks only to Shappley, whose hand did not have an "X".
¶ 58. Through the language of the majority, it is evident that there are numerous assumptions being made regarding this issue. It is improper and certainly not the job of this Court to make evidentiary assumptions about what the bartender may or may not have seen. Since the record is devoid of any support that the bartender actually saw Katie Martin drinking on the night in question, the majority's contention that the bartender's knowledge that Katie Martin was drinking constitutes "furnishing" is unfounded and is not grounds for reversal of the trial court's directed verdict in favor of The Library.
¶ 59. Any definitions or meanings of which the statute may be devoid should perhaps be addressed by the legislature, not this Court. The majority discusses foreseeability and further responsibility for bar-owners/bartenders to establish the correct age of purchasers. This puts an additional burdensome liability on bar-owners/bartenders to go above and beyond the statutory requirements, and such as, by a ridiculous illustration, requiring that the purchaser go home to get his birth certificate or other means of identification, like bringing witnesses or family members, to verify what the statute requirements already establish. Again, I definitely think additional legislation is needed.
¶ 60. The majority also makes mention of Miss.Code Ann. § 67-3-54(1) (Rev. 2001), however, the relevance of this statute subsection is not known. This statute states that a person at least eighteen years of age may consume beer or wine with the consent and in the presence of a parent or guardian. This Court finds no problem with that; however, the majority goes a step further. It states that "even a parent may not purchase beer or wine for a child under the age of 18, and therefore there is no implied permit for a fraternity brother or friend to purchase alcohol for an underage drinker." I am of the opinion that surely something must be missing. The case, sub judice, is about minors between the ages of eighteen to twenty-one, and the fact that the majority brings up the code section concerning parents not being able to supply beer or wine for a child under the age of eighteen is simply not relevant to this case.
¶ 61. The majority states that the inferences in this situation are strong that the Library knew or should have known that *635 they were providing drinks to minors. They state that the bar knew or should have known simply because Shappley ordered five drinks while minors stood by. I find that it is not so hard to believe that a college-age male would purchase more than one drink at a time, for example, during a "happy hour" to take advantage of the drink specials or to avoid working his way through a crowded room just to get back to the bar. I also do not find it unreasonable or unlikely that minors might be standing around the bar or in the bar area in an establishment where they are permitted to enter. The majority makes mention of the fact that the bar in question was not heavily populated on the night involved, however, this situation is not always the case, especially in college towns. In fact, a bar can become densely populated in a very short amount of time. Where are bartender or bar owners supposed to draw the line between crowded and uncrowded bars? The majority infers that a bartender should "follow the drinks to their prospective person," and this concept does seem simple enough, however, put in practice, this concept could be quite difficult. Again, for example, can a bartender really be expected to follow every drink sold, while at the same time continue to wait on other customers and check their age of majority? This can be even more difficult in a large establishment like the Library. I feel the majority infers too much in the case sub judice and draws lines that will be next to impossible to determine in the future.
¶ 62. Again, I would affirm the lower court.
THOMAS AND CHANDLER, JJ., JOIN THIS SEPARATE OPINION.
NOTES
[1] It is arguable that this language has created by implication a statutory tort that can be brought against those who do not gain the protections of the immunity. That has not been the manner in which the Supreme Court has discussed the matter, and we therefore just note it.